Oral argument as follows, 10 minutes for each defendant, 20 minutes for each plaintiff. Mr. Cafferkey and Surratt for the defendant's appellant. I want to ask everyone to please be conscious of keeping your voices up. It's a large room and the end of sentences tend to get lost. And feel free to adjust the podium if you choose. Just because I'm blind. Yes. Thank you. In short. Good afternoon. Thank you for allowing me to come down and represent Kenneth Jackson in this case. I would highlight, I just want to initially point out, I have a young man who is 18 years old. He did not shoot a gun. He did not seriously injure anyone. He currently has a 771-month sentence, which in the end is a life sentence. I would point out that even with good time and that 64-plus years he has to do, he will do 54 years in prison currently at the age of probably 19-1⁄2. As we know, in 64 years is a life expectancy to an inmate in the federal system. That was highlighted in the brief. So in essence, this gentleman is serving a life sentence. Folks, I would point out that a number one issue that I highlighted in here has to do with the consecutive running of the 924Cs in the robbery of the couple. And I would point out that this is the same act. I would point out that it was occurred at the same time. The victims were laid on the ground at the same time. Their keys were taken at all points in time. They were together. So my argument is these are not separate predicate offenses. This is one predicate offense. And then therefore there should have been one 924C. Don't we have to focus on the fact that there were individual and separate victims and each was a separate discrete victim and there was an act against that victim? Well, and I think about it in an example of if there were four couples that had left a bar or a restaurant and they were approached and they had all driven there together and they were all robbed at the same time and all their vehicles were taken, we would have seven 25-year 924Cs and one 7-year 924Cs for a total, and I was an English major, so I'm going to add that up, 182 years just in mandatory time on the gun charges. And would that seem to be a reasonable sentence? Absolutely not. In this case, there's no question the couple was approached as they walked together. They had driven separately, but for the fact that they had driven separately, there wouldn't even be a question, I would think. But maybe there would be. Maybe the U.S. attorneys would feel still that these are separate predicate offenses. But my argument to you is fine. So he was convicted for carjacking both cars, right? That is correct. He was convicted for stealing the car from a young lady, Z.N., or from a young lady, G.B., and a young man, Z.N. They were a couple together who had gone out that evening and they were just going to go their separate ways. So there were two carjackings. There are two cars. There are two vehicles that were taken. It can be argued that there was really one carjacking in that they were together. They had separate cars. However, they were both, again, at the same time, and Judge Gawne highlighted that, no question, this was at the same time. But she made the determination that just because there were two victims, I now have to impose two 924Cs. But, of course, if it had been much more tragic circumstances, if there had been two homicides, if your client, I know he did not, but if your client had fired a gun and shot and killed both of those victims, the prosecutor would be allowed to charge two homicides and we could have two punishments for two homicides, right? So I don't know how this case is different. There are separate offenses for double jeopardy purposes, correct? Your Honor, and I understand that point. How many guns did he have? My client had one firearm. My client had one firearm throughout that evening, and I would point out, and I highlighted a case in the brief on U.S. v. Finley, and it was really a great point, and I know that case involved drug trafficking or drug possession. But the point was 924Cs does not clearly manifest an intention to punish a defendant twice for continuous possession of a firearm in furthermore of simultaneous predicate offenses consisting of virtually the same conduct. And the legislative history on that indicates that each time you choose to pick up a gun and do an act, you should be punished. And in this case, it was all the same act, and my client picked up that gun and basically held them at gunpoint and got their vehicles. So there's no question that these two individuals were robbed, all right? But I would highlight that it should not be two 924Cs. This was one separate predicate offense, and therefore my client should only be charged with one 25-year. The court relied on Chapman? The court did rely on Chapman. And I believe Chapman just talks about statutorily that 924Cs are to be run consecutive, not concurrent. But in this case, there should have only been one 924C, and that's the argument from the defense. Did you ever come across the case of Wichitz-Vonga? Where, pardon me? U.S. versus Wichitz. I'm butchering this name. Wichitz-Vonga. I have not, Your Honor. And I haven't found a similar case where a couple was robbed at gunpoint and given two consecutive 924Cs other than this case. That being said, I would also like to point out another issue, obviously, that I think is very important to my client, is we're having an argument these days over whether the definition of carjacking is a crime of violence under a 924C 3A and 3B. And I would point out that there was a new case, DeMaia, that came out. And DeMaia was an immigration court case, but even Chief Justice Roberts highlighted the fact that in DeMaia ---- Well, DeMaia would take care of the residual clause, right? Correct. But we still have to grapple with the elements clause. That is correct. And the argument is that because of that intimidation element that is in the carjacking federal definition for carjacking, it is too vague and it's unconstitutionally vague, and therefore that element shouldn't have been found, and therefore this charge, crimed carjacking, and I know to a layman you'd say, well, that's impossible. But here, well, we have to just follow the law, and this is strictly statutory. How do you deal with the analogous case with the robbery statute, where you have very similar language, and the court has said that intimidation does satisfy the elements clause? I think it's McBride. McBride. The court was dealing with the problem with the word intimidation, but in the context of, I guess it's Hobbs Act robbery, and said it satisfies the elements clause. And that court was a U.S. Supreme Court case? No, it's a Sixth Circuit case. Sixth Circuit case. Your Honor, respectfully, I have held back two minutes in rebuttal. If I may, give me a moment and see if I can have an answer for you. Thank you. Good morning. May it please the Court, my name is Jamie Surratt. I'm here on behalf of Mr. Palmer. The brief speaks for itself. I've raised several issues in the brief, but I really want to deal with two or three of them, especially the first one. Because I believe that the government failed to establish, beyond a reasonable doubt, that Mr. Palmer was involved as an aider and abetter, because he was charged as an aider and abetter, not as a main principal. And for the life of me, I've looked at all the evidence in the light and most favorable of the government, I just don't see it. I don't see how the government got past it. Which carjacking is that? I'm sorry? Which carjacking? He's only convicted of one. Just refresh my recollection. I'm sorry, the first one, the one that you just discussed with the first one, counts one and four. Okay. He was convicted of the carjacking, count one, and 924C and count four. As to the first one, the only evidence that, in the light and most favorable of the government, that they were able to prove was that he was in the vehicle, in the back seat of a car. If you remember, there were four individuals in the car. The allegation was they all had guns, and the allegation was that my client and another co-defendant were in the back seat and two were in the front. The two in the front just bolted out and did whatever they did. My client remained in the car, didn't say a word, said absolutely nothing. And that's clear. So the question is, what evidence did they prove beyond a reasonable doubt to overcome their burden? If you look at what they have to prove, I don't want to go through the elements, you're familiar with the elements, but he has to encourage things of that nature. He said absolutely nothing. And this argument kind of goes along with my second and third argument, the 404B, all the evidence that came in that, in my opinion, should have never come in. But I'm jumping ahead a little bit, but the same thing goes for the 924C, that it was absolutely no evidence whatsoever that my client encouraged or assisted in the commission of the 924C. None whatsoever. I think the testimony is clear. The co-defendants that testified, they both said that there was no discussion whatsoever. And one said, if there was a discussion, I don't remember what was said. So, again, I'm reserving three minutes because I want to hear from the government what it was that they said to overcome that, because the record is clear. And I pointed out in my brief the testimony that pertains to that individual part that they must prove. And it just isn't there. So, go ahead. There was some testimony, though, about the bullets, right? Well, that goes to my second argument, the 924, I mean, the 404, they should have never come in. We filed a motion to exclude a large part of what the government wanted to introduce. And the court allowed to introduce evidence that I felt was highly prejudicial, dealing with what you just said, Your Honor. Allegedly, there was a shooting the night before, and it goes to the gang stuff that it should have never come in, in my opinion, because this is a case where it didn't involve gangs. The victims weren't gang members. But I thought the judge didn't let the shooting in. Oh, yeah, it came in. The shooting the night before? Yes, it came in. So, this is what I have. This is what the testimony that we felt was highly prejudicial. The court was allowed to let a court offender testify that the night before they went out and rode around and stole a car, not carjacked, stole a vehicle. It was already hot, supposedly. They come back. They go out and do a shooting in the middle of the street, jump out the window like in the westerns, starts firing guns, come back. They go to somebody's house, a girl at the party, and then later on that night, they got into another vehicle and went to the Tremont area, and allegedly that's when the carjacking occurred. I have no idea what that had to do, whether or not my client was an aider in a bed and a carjack in Tremont hours, hours later on. That's why we objected strongly to the gang language that came out, because you mentioned the word gang. We all know exactly what that means to a jury. Nothing positive about that came out. I could see, and typically when people are charged or the court allows the U.S. attorneys to bring that forward by testimony, it's because there's an affiliation. The victims are gang members. There was something to have to do with the gang. In this case, there was absolutely none whatsoever, none whatsoever. And I feel very strongly that my client did not get a fair trial because of that. Imagine if we had a trial minus the 404B material. We would have had four individuals in a vehicle. My client says absolutely nothing. He's in the back seat, two individuals bolted on a Camaro carjack. How does that overcome the burden that they must prove beyond a reasonable doubt that he aided and abetted those individuals without nothing else in that? Because I'm telling you, there was absolutely nothing else in that. Would that have been a fair picture for the jury? That's what happened. That's what he was charged with. He was only charged with that. He was only charged with that, but there was background to it. But I think you have to do the balance test. Was it prejudicial to allow the gang, something that occurred hours before some type of shooting that allegedly my client occurred? I mean, it seems to me that it's Judge Yonker, right? Gone. Oh. It seems like there was a pretty thorough analysis of the prejudice and the probative value. Well, but the court, you also recall that the court allowed, granted our motion in part, and the other motion she held in the bans because she really wasn't sure what was going to come out. And the first time that it came out, I objected. And I think at that point, we should have done another balancing test to determine what it was that he was going to say and how, how was it going to come in, whether they should have come in or not. I, I, again, and, and their, their premise of this case was that my client provided the guns to those individuals on the opening statement. I know it's not evidence, but that was said, that was their premise. And that's how they're going to get around that, the eating and abetting. If my client would have provided the guns to those individuals, I could see that. But clearly that's not what happened here. All four had their own weapons. My client did not provide or assisted in any way whatsoever to them possessing those weapons. And, you know, I talked also about the prejudicial value. I mean, you'll count two and three. The fact that the government was allowed to, because as you know, my client was really originally charged with all the carjackings. And, and there was a, a, a court offender was going to testify. It was really, really shaky. Mr. Taylor. And Mr. Taylor had given numerous, numerous statements prior to that. He was all over the park. Sometimes something happens. Sometimes it didn't happen. As a matter of fact, right before trial, two of the charges had to be dismissed because he clearly told the government. And my guy was not, Mr. Palmer was not involved in those cases. It's relevant that they, if I, you're, you're talking about the Denali, right? Correct. Okay. Is it relevant or is it, do you think, some evidence of guilt that the four of them were driving together and two of them jumped out and then the others got in the front seat and then they followed the car and then they all got in the car after and searched it for valuables and then use the, you know, went driving away in the car. I would argue that's mere presence. It's what did he do? What mere presence at a crime? I would argue what he has to do something else. Judge, he has to do something else. He has to have some knowledge to those individuals. We're going to do what they did. And there's none here. Isn't there testimony that your client participated in a discussion about the need to carjack a second car in order to get rid of the, so they could have a second car so that the other gang members, the rival gang wouldn't know? No, that was the, the codefendant testified that there was a discussion, but he didn't remember what was, what was said. You're talking about early on before the shooting, but I'm talking as far as this case is concerned, the carjacking, that's what he testified to. I highlighted that portion of the testimony in my brief. He said he didn't remember what was said. One of them, the other individual said there was no conversation. So, and again, I was real quick, you know, 27, 29 witnesses, the individual that I was referring to, the codefendant, it was really shaky. He testified at the very end and he cleared my client of all the wrongdoing, except the one that he was convicted of. But yet, the jury heard numerous, numerous evidence that was highly prejudicial to my client. Had the government, you can't tell them how to present their case, but without those individuals, we would have had a totally different picture as to my client. I want to go back to the testimony that Judge Larson, which Judge Larson just referred. I'm sorry, I'm sorry. Yes. About the preparatory statements, and I understand you say that that was before, and then there was some intervening thing, and then it had nothing to do with this, but why wouldn't those preparatory conversations about planning and all, even though they occurred earlier, why isn't that relevant and connected to the events that actually occurred, to show an active connection and participation? It was an uncorroborated statement by a co-defendant, first of all. I would argue that to the court. And number two, we didn't know exactly when that statement may have been made, may not have been made, because he was not specific when that occurred, if it occurred at all. Doesn't that just go to the weight that should be accorded to that? We don't know what was said. I understand what you're saying. We don't know what was said. We really don't know. We don't know what was said, because the other co-defendant denied making that statement, and this individual, I wrote exactly what he said on my brief. But real quick, I want to get to the 924C. I don't have a lot of time, because I think that's crucial in this case, and the court hit right on point is the intimidation. You can intimidate someone without using the threat of physical force or force. I can intimidate somebody by my, not I would, but some individuals get intimidated by their size, by their color, things of that nature, and that's why demise is very important. You can't get convicted of this offense unless you have intimidation plus, and there's enough so that the jury could reasonably infer that if the victim hadn't given up, he or she would have been hurt. That's why demise wants you to, demise deals, in my opinion, with the vagueness of the statute. What? Vague. Unconstitutionally vague. But we're not talking about that clause. We're talking about the elements clause. Well, one of the elements, as you know, is intimidation. So the question is, can you be convicted of a crime that doesn't require force or threat of violent force? And you can. You can. By intimidation, I mean, you cannot be, it is so vague that you could intimidate someone without that, without using force or threat of violence force. I understand, but in the context of this particular statute, the intimidation has to be such, and the circumstances have to be such, because of the introductory language, unless I'm mistaken to the offense, that if the person hadn't let you have the car, that person would have been either killed or injured. Or nothing. Well, I don't think you can be convicted of this statute if nothing. Sure, you could. You took the car. I'm sorry, what? I mean, I don't know that. Each case is different.  just by your presence, by your presence and having a gun, by intimidation, again, once again, just the size, without saying a word or doing anything, you tell me you could be convicted of that statute. That's your argument? I'm sorry, I don't follow you. That's why I asked that question. Okay, first of all, having, displaying a gun, if you say just by having a gun and taking a car, displaying a gun is a threat of violent force, right? Yes. So that, doesn't that satisfy the elements? Cause? I would argue that. How do you get convicted of this offense without satisfying the elements? I would say it's not just this offense. I'm telling you that you can be convicted of, you can be convicted of this offense without force. Okay. Or threat of physical force, simply by intimidation and intimidation itself doesn't have the force. I guess I'm going around. I don't have a lot of time. I'm going to, I'm preserved to see what they say, see what the U.S. attorney has to say. But just recently, there was another case. It's not in a brief. I provided it to the U.S. attorneys just last week. Eastern, it's a 2255 at the Eastern Virginia under the Damiah case. I'm sorry. I'm sorry. That is a residual clause. Okay. We're talking about the elements cause. Right. Okay. I just want to bring it to the court's attention. Okay. Thank you. Thank you. Good morning. May it please the court. Matthew call for the government. The government presented sufficient evidence at trial to sustain the convictions as to both defendants and specifically for Mr. Palmer, as it related to the carjacking on July 25th. The testimony at trial relating to that account specifically provided the defendant was out in a car with three other individuals. They had stolen one car. They had taken some shots at a rival gang member. And once they had done that, they realized that the car that they were in was hot and they needed to go get another car. And that's exactly what they did. And the testimony at trial was that defendant Palmer was involved in those discussions. We cited the sections of that discussion in our brief. I believe it was at page ID 2401, 2402. And that discussion came with the background of Mr. Palmer's position. He was a leader within this heartless felons group. And Calvin Rembrandt testified that because of that, he had more power, more authority, and more control. And that was at page 2385. So would you just go back and specifically flesh out the conversations of Mr. Palmer that indicated his active and culpable participation? And Mr. Rembrandt testified he couldn't remember the exact words that were used, but they all agreed we were going to go get another car. And that was the general nature of the discussion in the car after they had engaged in the first shooting. Also, after the first shooting at the rival gang members, they went back to an individual's house. Mr. Palmer went inside because he needed more bullets, and he asked the other three individuals, does anyone else need more ammo? Do any of you need more bullets? And Rembrandt asked for more ammo. Jackson and Taylor did not. So that shows he knew that they were going to go out and commit other violent acts. And on top of that, he knew that Taylor, Jackson, and Rembrandt also possessed firearms when they were going to do that. They went out to another side of the city, to the Tremont area, and they looked around. And when Jackson spotted a victim, he pulled over. He got out, and they had all agreed, we're going to go steal another car. They didn't get out with a screwdriver to try and jimmy the lock. They didn't get out with a rock to break through the window to steal the car. Taylor and Jackson got out with guns. And after that happened, Palmer and Rembrandt were in the back seat, and Palmer gave Rembrandt an instruction, get into the front seat. Didn't tell him, get into the front seat and let's get out of here. Get into the front seat, and they waited. They were the getaway drivers for Jackson and for Taylor in case something went wrong with that carjacking. And that's aiding and abetting. They knew what those guys were going out there to do, and they sat in the background and waited to provide assistance. That's aiding and abetting the carjacking. And since Palmer had advanced knowledge that Taylor and Jackson had firearms, and he was involved in the underlying offense, that's aiding and abetting the 924C under Rosemond. So we believe there was sufficient evidence to support Palmer's conviction on the July 25th carjacking of the GMC Denali. And when you add in his conduct after the fact, they go back, they share in the proceeds, they use the credit card together. And even when Mr. Palmer was finally arrested, his statement to the police was not, which is an interesting statement because I'm not sure if it comes through in the record, but Palmer had a number of tattoos and had a fairly distinctive appearance. But what it really shows is that his role in this case was more of a leader. He was giving instructions to the underlings. He had power, authority, and control. He gave instructions to Jackson and to Taylor, and they carried them out. So he participated in this carjacking, and there was sufficient evidence to convict him of it. Evidence regarding the shooting that occurred. It wasn't the night before. The shooting was the same night. The shooting was earlier in the evening. Maybe it did carry over midnight, so technically it was the previous day. But this was all part of one instance, one episode. And it went to the motive for committing the carjacking on July 25th. How much earlier in the evening? The testimony is not clear. Hours. Rembrandt testified that they had gone out that night. They had gone to a party, and then as they were driving around after that, they stopped at a gas station. And then when they were driving through the neighborhood, they saw members of a rival gang and they shot at them. Immediately after that, they realized their car was hot, and they needed to get a new one, and that's what they did. So we're not talking about a significant break in time. Judge Gaughan, in evaluating this evidence, found both that it was admissible for motive under Rule 404B, which is entirely proper, and also that this evidence was inextricably intertwined with evidence of the carjacking. And that's in Record 74, her order evaluating that. And I would point out Mr. Surratt claims that this was significantly prejudicial, but really when you look at the way the government argued this evidence, the government argued it surely for motive. The government was very careful when addressing this evidence in closing argument to limit its argument to motive. And so if there was any error, it was harmless, because of the limiting instruction that the court gave on pages 2755 to 56, and the government's argument that this evidence was properly focused on the motive. And that was at pages 2681 to 2682. Switching bases now to the 924C count, first going to the crime of violence issue, whether or not carjacking is a crime of violence for 924C. Obviously, DeMaia changes the argument that we initially made in our brief. In our brief, we cited to Taylor, which published case out of this circuit that squarely addressed this issue. Since that time, since we filed our brief, DeMaia has come out. This court doesn't need to specifically address the constitutionality of 924C3B, because under 924C3A, the use of force clause, carjacking clearly qualifies. Carjacking must be done, A, with the intent to cause death or serious bodily harm, and B, must be done with force and violence or by intimidation. And they focus on the intimidation portion of that as being potentially problematic. But every circuit court that has addressed that, and we cited three of them in our Rule 28J letters, I believe it was Evans, Jones, and Craig, has said that under 924C3A, intimidation is merely the threat of force and violence. And that's consistent with what this court has said in the bank robbery context. Bank robbery under 2113A is a divisible statute, but one way to violate that is to act with force and violence or by intimidation. And this court held both in McBride, which was a career offender case, but it was later made applicable statutorily in the Henry case, that acting by force and violence and by intimidation is a crime of violence. It is a use of force. And so under 924C3A, carjacking, which has the exact same language as that portion of the bank robbery statute, can't be distinguished. So we believe that the carjacking convictions categorically qualify as crimes of violence under 924C3A. And there's no constitutional infirmity to those convictions. Turning to Mr. Cafferkey's argument regarding consecutive 924C convictions, he's asking this court to adopt an episode or an occasion test. And this court considered doing that in Chapman. What about Wichitz-Vonga? And I'm sorry, Your Honor, I'm having trouble hearing you. If you could lower your... Wichitz-Vonga? Maybe it's 819F3-260. And I don't recall that case off the top of my head, Your Honor. Well, okay. So if I understand correctly, the defendant... Let me just read some. As a matter of statutory interpretation, we hold that the simultaneous violation of two federal conspiracy statutes cannot support two 924C charges on the sole basis of one firearm use. And I'm not familiar with that case, Your Honor. We don't have two separate conspiracy statutes here. We have separate predicate crimes of violence. They were committed at the same time, but they were still separate predicate crimes of violence. Mr. Jackson is not making a multiplicity argument here. He's not arguing that he should have only been charged with one carjacking. There were two victims. There were two cars taken. I understand that, but we're talking about... He's arguing there should only be one 924C conviction because there was only one gun and one event. And some of the cases talk about the choice not to commit the underlying crime, but the choice to use the gun, to commit a crime using the gun, and that it's fine if it's one gun and you're doing things sequentially because you're making these sequential choices, distinct choices, but there's only one conviction when you commit two offenses at the same time with one gun. A few responses to that. First off, there were two guns. The other individual who got out of the car did have a firearm on him as well, so there were two guns. Was he convicted with respect to that gun? Taylor did not go to trial. He ultimately entered a guilty plea. I don't mean Taylor. Was Jackson convicted of two 924s with respect to two different guns? He was convicted of two 924Cs, Your Honor, yes. For the two carjackings on July 26th, the carjackings were counts 6 and 10. Jackson was convicted of the firearms counts, the 924Cs under 7 and 11. Counsel, I think you're not really focusing on what she's saying. She's saying that Jackson had two guns. Was he convicted of two? I think what you're saying is there were these multiple counts and that whether he had two guns or not is not really relevant. You're focusing on the victim end of this or the acts end, and she's asking you about the quantitative number of weapons Jackson had because that case that she's talking about seems to hold that if there was only one act of use, carry, or possession in the case, that multiple 924Cs cannot lie. If you could focus on the question. There have been plenty of cases that say the number of guns doesn't matter. It's the number of underlying predicate crimes of violence that are committed, not the number of firearms. Does it talk about time parameters in those cases? In the Chapman case, it did. You remember your adversary says this was really one event. There were multiple people, but that was really one event. That's their argument. I understand that. This court has rejected the one event theory in Chapman. Chapman is unpublished. I'm sorry? Chapman is unpublished. Chapman relied on Burnett, which was published. Talk about Burnett. I'm sorry, Your Honor? Talk about Burnett. In Burnett, that was an individual who kidnapped a family and robbed a bank. The family was the bank teller's. That's a one-transaction argument. That happened sequentially, right? It was all part of the same occurrence, though. That's occurrence writ large. That's sort of the criminal episode. We're talking about committing the offenses, and I agree with you on that. I'm asking you about committing the offenses simultaneously. That's what I'd like you to focus on. When you have one gun and you're committing it simultaneously. The defendant didn't have to commit two carjackings. They didn't need to take two cars from two victims. They committed two predicate acts at the same time with one firearm. I can't dispute that this was part of the same encounter, the same instance. Was he convicted? I'm curious about on the second one, the one that he did not take. What was the nature of the 924C conviction? Was it aiding and abetting? Is that what he was charged with? Yes, and I don't have the indictment here. I think both of the firearm counts charged either as a principal or under Section 2. Obviously, he was possessing one gun and he was aiding and abetting the other individual, Taylor, at the time he was doing it. These were two individuals acting in concert at the same time. By holding a gun over one of the victims while his co-defendant was holding a gun over the other victim, they're aiding and abetting each other. They're providing support to each other while committing these two carjackings. It's easier for two people to carjack two people than for one person to do it. He's obviously aiding and abetting him by providing backup to him. Was the jury instructed that if you find that he aided and abetted Taylor in possessing the other firearm, then you can find him guilty, or was this sort of he possessed a gun and he's convicted of two carjackings, and therefore they're two convictions? I don't recall the specific instruction on that count, Your Honor. I know that a Rosemond instruction was given, but I don't recall if that specific instruction was given for those two counts. But I would simply argue that under the same theory that this court rejected in Chapman, a defendant took a firearm, unloaded it four times into a residence. There were four counts of aggravated assault with a firearm in aid of racketeering, four counts of attempted murder in aid of racketeering, eight 924C counts, and those eight 924C counts were affirmed. And yes, it's unpublished, but it relied on the same theory as this court found in Burnett, that one episode is what matters, is not what matters, it's the number of underlying violent crimes that are associated with the activity. And so multiple 924Cs were applicable. The cases that Mr. Jackson cite, primarily in the Finley case, which he pointed out directly, deal with instances where there were multiplicity problems in the indictment. Single drug possession counts that were improperly split into two counts. Drugs that were found in a defendant's car, we get a search warrant, they go into the house, the government charges possession of the gun in the car and the drugs in the car in one, drugs in the house and guns in the house is another. This court, any time it's seen that type of fact pattern, it says no, that's really only one underlying predicate act, and therefore you can only have one section 924C relying on it. Here, unquestionably, we have two separate victims of two separate carjackings. There are two separate predicates. The possession of the firearm and aiding and abetting his co-defendant at the same time is a separate predicate act that can support a separate section 924C conviction. And so we would ask the court to find that a consecutive 924C for both of the two carjackings that occurred on July 26th be affirmed, because the unmistakable language in section 924C is that consecutive sentences must be imposed. Jackson's argument is really trying to bootstrap a concept from the Armed Career Criminal Act into 924C3. In the Armed Career Criminal Act, we've got to prove that previous convictions were committed on occasions different from one another. That's the language straight out of 924E1. There is no such language in 924C, and the fact that Congress included it in one section but not in the other should be read somewhat as a statement of congressional intent. If they wanted to have a separate occasion concept applicable in section 924C3, they could have included such language. Let me ask you, under 924C in the statute, if the court finds that there are these separate and distinct, albeit related, acts, is there any discretion in the language of 924C that allows concurrency for any reason, or is it 7 plus 25 plus 25 plus 25? I don't believe there is any such discretion for that, Your Honor, and I'm trying to find the specific case that slipped out of my mind, but the Supreme Court essentially addressed that in Deal v. United States, where there is no such discretion. So we don't believe that the court would have discretion in that instance. Thank you. If there are no other questions, I would rely on my brief for the remaining arguments. Thank you. Thank you very much. I think I have two minutes. Okay. Is that fair? I promised I would come up here. I promised I would come up here on that McBride case that you cited. Here's what I would highlight concerning the carjacking. The clause is, there's two clauses, force and violence or intimidation. We don't know what the jury relied on, whether they relied on force and violence or did they rely on intimidation. I think that's one of the problems that the courts have had and why they feel it's unconstitutionally vague. What the jury relied on, we don't know. We don't feel that carjacking should be a crime of violence as it is situated today. And clearly, the legislature, and I'm sure Mr. Call, a fine attorney, and the U.S. Attorney's Office will certainly go to Congress to change the makeup potentially of carjacking. But I would highlight that in intimidation, we don't know. You can have, as ladies and gentlemen, as the ladies know, we can have, without threat of the use of force, we can have intimidation. Intimidation is basically someone who has a feeling that they are being intimidated. But it's not the actual force used on that person, that element that we discussed in that clause. So I would state that the A portion of the 924C definition still has not been met. It's constitutionally vague, and I would ask that we find here today that carjacking, as it's written today, should not be a crime of violence. Thank you very much. Thank you. Hi, good morning again. I want to get back to the sufficiency argument and answer your question regarding what was said beforehand. Keep in mind, the shooting, we don't know when, certainly was hours later. They then steal a car. They didn't carjack a car. They stole a car. And so what did they prove after that? What did the government prove after that to make sure Mike Kline knew, should have known, or assisted to the carjacking? Do you only have two co-defendants testify? Specifically, as to one, Mr. Taylor, did you rob him? Yes. Prior to robbing him, was there any discussion at all about that? No. That was his testimony. Rembert, keep in mind, I specifically asked him, did you rob anybody? No. Did you carjack anybody? No. Now, this is the individual who's going to testify against Mike Kline. Again, he specifically asked about the discussions because the government needed something. They didn't have anything. They had to tie it in. And he was asked, was there any conversation? I can't remember. It was so long ago. That's what he said. That's when the transcript. And then they're going to argue, but they knew what they were going to do. Well, maybe they were going to do what they did hours before, just steal a car. That's what they did. They didn't carjack. They just stole a car. And that's why the sufficiency. I know it's a very difficult argument to make. But in this case, if you really look deep in the heart, and I think there's merit to it. He talked about the motive. They argued the motive at the end. Everything changed. Initially, they argued that Mike Kline provided the guns. That goes out the window. That didn't happen. They said it was a conversation. That didn't happen. So then they argued the motive the night before regarding the gangs and that kind of stuff. And I really think if you look deeply into this case, as far as what came out of their mouths, the co-defendants, because that's all they have. All the other witnesses, the 27 of them, said absolutely nothing to hurt my client. Nothing at all. And what came out is what I just told you. That is the only testimony regarding conversations that they had that was about to transpire that evening. Thank you very much. Counsel, I believe you were both appointed under the Criminal Justice Act. Is that correct? It is, Your Honor. Thank you both very much. We appreciate it. Thank you.